MR. JUSTICE SHEEHY,
dissenting:
I dissent. This case should be dismissed under our statutes the evidence of the breath tests were inadmissible.
Evidence of the results of a breath test for alcohol concentration is admissible if the breath analysis report was prepared and verified by the person who performed the test. Section 61-8-404(b)(i), MCA. The police officer here who prepared the report, being not otherwise divinely equipped, could verify the report only by use of the calibration check of the intoxilyzer. The contention of the State is that we can ignore the erratic result of the calibration check. Under the statute for admissibility, however, the report must not only be prepared by the officer, but verified by him.
The procedure established for police officers to verify the breath test of a DUI suspect is to conduct a calibration check using a reference solution with a known 0.10 alcohol concentration.
The majority admit that the intoxilyzer test of the simulator solution produced two results, 0.60 and 0.62, just prior to the testing of the appellant. The readings taken of the appellant shown an inaccuracy, registering 0.202 in one instance and three minutes later, 0.187 in another, a variance of at least 7.5 percent, although the intoxilyzer is supposed to be accurate to within plus or minus 5 percent.
We have no way of knowing whether the intoxilyzer was working accurately on May 26, 1987, when O’Brian was tested, because it is impossible to determine from the record the known concentration of the alcohol simulator at the time, which would have verified his test results. The State tries to explain away the inaccuracy of the verification sample by having its witness testify that the alcohol content of the simulator had reduced in the period of time from a known concentration of 0.10 to the recorded concentration on May 26, 1987 of 0.060. The log belies this argument. The log of this police officer’s tests with the registered calibration checks are as follows:
*233 Date Simulator Results Blood/Alcohol Results
4-16-87 .073 .227
4-21-87 .078 .000
5-9-87 .063 .158
5-17-87 .066 .175
5-17-87 None .164
5-17-87 None .170
5-25-87 .064 .219
5-26-87) .060 .207
5-26-87) O’Brian .062 .187
7-6-87 .084 .162
7-14-87 .081 .000
7-20-87 .074 .084
8-12-87 .046 .048
8-15-87 .091 .235
9-9-87 .050 .195
9-19-87 .065 .169
9-19-87 .053 .063
9-19-87 .074 .133
The logs show conclusively that if the intoxilyzer were correctly recording the alcohol concentration in the simulator solution, the alcohol concentration increased rather than decreased following the O’Brian test. In fact, the check tests of the simulator solution eight days before O’Brian was tested (May 17) showed no alcohol in the simulator solution. On May 26, for a check of O’Brian, the simulator had increased in alcohol concentration from no alcohol on May 17 to 0.060 on May 26! In the test checks of the simulator solution in the months following the O’Brian test, on July 6 the intoxilyzer recorded 0.084, an increase of 0.022 in alcohol concentration or a 35.5 percent increase. On August 15, the simulator gave an alcohol concentration result of 0.091, an increase of 46.7 percent from the O’Brain check test. Thus, the State’s explanation that as time wore on the alcohol in the simulator solution decreased is belied. The intoxilyzer check tests following O’Brian’s tests show the reference simulator increasing and decreasing in alcohol content. Either the Intoxilyzer was incorrectly recording the check tests or the reference simulator solution was performing a feat of alchemy, manufacturing and devouring alcohol at will. O’Brian therefore established not only a reasonable doubt as to the accuracy of the tests performed upon him, but a very substantial doubt as to the verification of his tests.
The State Crime Laboratory personnel recognized the problem *234 when the machine was inspected on October 8, 1987. An entry was written by the inspector in the log as follows:
Annual Inspection of Calibration2/new 186 — 19/.100 *DO NOT USE THIS INSTRUMENT WHEN THE RESULT OF THE CALIBRATION CHECK IS OVER .110 OR BELOW 0.90/ CHANGE SOLUTIONS ONCE PER MONTH AT THE FIRST OF THE MONTH, RECORD THE DATE OF THE CHANGE IN THE LOG BOOK, AND ALWAYS ALLOWS THE SOLUTION TO HEAT UNTIL THE READY LIGHT COMES ON.
The accuracy of the verification tests is important because of the very minute amounts of alcohol being measured through a breath test. To convict a person of DUI under 61-8-406, MCA, it must be shown that the alcohol concentration in his breath is 0.10 or more. “Alcohol concentration” for breath tests is defined by statute as “grams of alcohol per 210 liters of breath.” Section 61-8-407, MCA. This is a weight/volume definition, proportioning the weight of alcohol against a volume of air.
Absolute alcohol has a specific gravity of 0.789. A gram of alcohol will occupy a volume of 1.26 cubic centimeters. A gram of alcohol is proportional against a breath volume of 210 liters, which equals 55.5 gallons of liquid volume. That proportion is so distended that one can see that a variation of a very small amount in alcohol content will result in wide swings in the resultant alcohol concentration in the same volume of breath.
A cubic centimeter may be considered as the upper top of your little finger distally from the root of the nail. To achieve a 0.10 alcohol concentration sufficient for conviction, approximately Vs of the volume of the top of your little finger, or 0.126 cubic centimeters of alcohol must be present in 55.5 gallons of breath. The man with a lung capacity of 55.5 gallons has yet to be born, and so the amount of alcohol to qualify for a 0.10 alcohol concentration in breath must be reduced in that proportion to the amount of alveolar air present in the lungs. It is a tiny amount. There is no doubt that scientists have devised machines such as intoxilyzers which will measure breath alcohol content within a range of plus or minus 10 percent. Machines, however, are not unlike your automobile. Sometimes things go wrong. For that reason, the statute on admissibility of evidence of breath alcohol tests requires verification of the machine’s results. Here, verification is lacking.
O’Brian was first stopped in this case because he failed to dim his lights at 2:00 in the morning in Roundup, Montana. He must be *235 truly amazed at what unfolded in connection with his prosecution subsequently. The principal witness relied on by the State was William Newhouse, described by the State as a forensic scientist from the State Crime Laboratory. “Forensic” literally means argumentative. There is no such science as forensics because a forensic is an art and not a science. His educational background is in physics. He has testified in regard to determination of blood alcohol by breath analysis over 60 times in Montana courts. If his testimony here is an example, he is more of a paid gun than a scientist. His testimony essentially is to the effect that the intoxilyzer was working correctly when the simulator solution was first used and was working correctly on October 8, 1987, when it was inspected by a person from the State Crime Laboratory. His testimony is that we can disregard the erratic results of the simulator solution because the intoxilyzer was recording accurately. What is left out in this testimony, however, is that without a reference simulator of known alcohol content, the tests taken of O’Brian on May 26 have not been verified by the person administering the test. Section 61-8-404 (b)(i), MCA. Under the statute, therefore, the results of O’Brian’s test should not have been admitted into evidence.
I would reverse the conviction in this case.
MR. JUSTICE HUNT concurs with the foregoing dissent.